UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BAILEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ZENDESK, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-01243-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

Lead plaintiffs Brian Bailey and Scott Franklin bring this class action securities lawsuit on behalf of themselves and similarly situated former public stockholders of Zendesk, Inc. against both Zendesk and former members of Zendesk's Board of Directors. Defendants have now moved to dismiss plaintiffs' complaint for failure to state a claim under Rule 12(b)(6). For the following reasons, the Court grants defendants' motion to dismiss with leave to amend.

## BACKGROUND

Zendesk is a customer service software vendor that was founded in 2007.[1] In October 2021, Zendesk proposed acquiring Momentive Global, Inc. and released revenue projections that valued Zendesk between $130–$197 per share. The proposed transaction was condemned by Zendesk's shareholders and in particular by the company's major shareholder JANA Partners LLC, which announced that it might attempt to replace Zendesk's board members if the transaction were to go through. In February 2022, Zendesk's shareholders voted overwhelmingly against the Momentive transaction, which was thus terminated. Plaintiffs allege that the Zendesk

---

[1] The following facts are drawn from the complaint. In considering a Rule 12(b)(6) motion contending that a complaint fails to state a claim, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009).

Board had nonetheless lost its support from JANA, which purportedly urged the Board to either sell Zendesk entirely or face the risk of removal. In March 2022, with an allegedly newfound interest in selling the company, Zendesk released revised revenue projections that estimated even higher revenues than were projected in October 2021 during the proposed Momentive transaction.

On May 5, 2022, Zendesk received a bid from the private equity companies Hellman & Friedman LLC and Permira Advisers LLC (collectively, the Consortium) to purchase Zendesk for $120 per share. On May 24, 2022, the Consortium revised its proposal to $96 per share after allegedly determining that the Board was under tremendous pressure to sell. Zendesk's stock price closed at $88.18 per share that day. In the intervening period, Zendesk's financial and market performance had deteriorated, and defendants had learned that Zendesk's gross and net bookings for April 2022 had declined year-over-year by 7% and 13%, respectively.

The Board was unsatisfied with the Consortium's proposals, believing that they undervalued the company. JANA thereafter started a proxy contest for Zendesk's board seats in June 2022. Zendesk's stock price closed at $80.52 per share on June 6, 2022, when Zendesk officially ended the sale process.

On June 9, 2022, the Board announced that continuing to operate Zendesk as a standalone public company would be in the best interest of Zendesk and its stockholders. The stock price nonetheless dropped by 14% to $69.04 per share on that day, and it fell to just $64.97 per share the next day. By June 13, 2022, Zendesk's market stock price had dipped from more than $120 per share in April 2022 to below $60 per share. On June 15, 2022, Zendesk's financial advisor Qatalyst Partners provided defendants with gross and net bookings data for May 2022, which indicated that bookings had declined year-over-year by 16% (gross) and 36% (net).

On June 17, 2022, the Consortium submitted a renewed bid to purchase Zendesk at $75.50 per share, and JANA said it would end its proxy contest if Zendesk's Board went through with the sale. A few days later, Zendesk's management presented the Board with new revenue projections showing significant reductions relative to both the projections prepared in connection with the proposed Momentive transaction and the March 2022 projections. The Board also approved Fairness Opinions from financial advisors Qatalyst and Goldman Sachs that valued the company

2

between $66–$116 per share (Qatalyst) and $58–$96 per share (Goldman Sachs). Plaintiffs allege that these downward projections were made due to JANA's pressure to sell the company and its pending proxy contest.

On June 24, 2022, the Board announced its proposed merger with the Consortium. JANA withdrew its proxy contest the same day. On August 8, 2022, defendants filed a proxy statement with the SEC soliciting Zendesk's shareholders to approve the merger.

Minority shareholder Light Street Capital Management, LLC believed that the company had substantial long-term potential. On August 29, 2022, Light Street offered to recapitalize Zendesk by purchasing 50% of the company's outstanding shares at $82.50 per share. The Board declined the offer. On September 19, 2022, Zendesk's shareholders approved the sale to the Consortium at a price of $75.50 per share.

Lead plaintiffs Bailey and Franklin allege that Zendesk was significantly undervalued in the sale to the Consortium, leading to financial losses for the public company's former stockholders. Plaintiffs assert claims under: (1) Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, against all defendants for presenting false and misleading proxy statements to shareholders to support their merger proposal; and (2) Section 20(a) of the Exchange Act, against the individual board member defendants as controlling persons for their participation in making the allegedly false and misleading proxy communications. Plaintiffs allege that the following misstatements were made in the August 8, 2022 proxy statement: (1) that the June 2022 revenue projections were reasonably prepared based on the best available estimates and judgments by Zendesk management of the company's future financial performance; and (2) that the June 2022 value per share was reasonably determined based on accurate valuations and objective Fairness Opinions by Qatalyst and Goldman Sachs. Plaintiffs request class certification, damages, costs, and attorneys' fees.

Defendants now move to dismiss the lawsuit under Rule 12(b)(6), arguing that their August 2022 proxy statement communications were not false or misleading because Zendesk's bookings metrics had declined in the months preceding the sale. They also contend that Zendesk's stock price had been steadily decreasing until the sale to the Consortium, and that the $77.50 price

3

per share in fact represented a 33.7% premium on Zendesk's market price of $57.95 at the time the deal was signed.

## LEGAL STANDARDS

Section 14(a) of the Exchange Act makes it "unlawful for any person, … in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, … to solicit any proxy or consent or authorization in respect of any [registered] security." 15 U.S.C. § 78n(a)(1).

SEC Rule 14a-9 provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

For plaintiffs in private securities fraud class actions like this lawsuit, the Private Securities Litigation Reform Act (PSLRA) creates "formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6)." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

To state a claim under Section 14(a), the PSLRA requires that a plaintiff: (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement … is made on information and belief, … all facts on which that belief is formed," 15 U.S.C. § 78u–4(b)(1)(B); (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u–4(b)(2)(A); and (3) show that "the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages," 15 U.S.C. § 78u–4(b)(4).

4

## ANALYSIS

### I. Plaintiffs' Complaint Fails To State a Valid Claim Under Section 14(a).

#### A. Plaintiffs Have Not Adequately Pleaded Falsity.

A statement is false or misleading "if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). The purportedly false or misleading statement must "directly contradict what the defendant knew at the time." *Weston Family Partnership LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022). Both parties agree that the June 2022 revenue projections and value per share determinations are opinion statements. *See* Dkt. No. 37, at 12; Dkt. No. 41, at 11. Section 14 challenges to such opinion statements require a plaintiff to adequately plead both objective and subjective falsity, meaning that the plaintiff must allege "both that the speaker did not hold the belief she professed and that the belief is objectively untrue." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1056 (9th Cir. 2023) (cleaned up).

#### 1. Plaintiffs Have Not Sufficiently Alleged Objective Falsity.

To adequately plead objective falsity, plaintiffs must allege facts demonstrating that defendants undervalued Zendesk in their August 2022 communications to public stockholders by relying on unreasonably low revenue projections. Plaintiffs cite the higher October 2021 and March 2022 revenue projections, before JANA purportedly began applying pressure on the Zendesk Board to sell, to allege that the lower June 2022 projections were false and misleading.

In their motion to dismiss, defendants respond that the valuation and revenue projections relied upon in the August 2022 proxy statement were not false or misleading because they accurately reflected Zendesk's market stock price, which had deteriorated from $120 per share in April 2022 to $60 per share in June 2022. *See In re Finjan Holdings, Inc. Sec. Litig.*, 2021 WL 4148682, at *9 (N.D. Cal. Sept. 13, 2021) ("[T]he full picture of the sales process as described [] indicates that the [] valuation was not mere happenstance but rather reflective of the true market value of [defendant's] stock."). Defendants argue that Zendesk's sale to the Consortium at $77.50 per share represented a 33.7% premium on the company's stock price when the deal was signed. Defendants also argue that Zendesk's financial performance was plummeting before the sale as

5

year-over-year net bookings had declined by 36% in May 2022. Dkt. No. 34, at 13.[2] Defendants further contend that the Fairness Opinions provided by Qatalyst and Goldman Sachs in an arm's-length sale process verified Zendesk's own valuation.

Plaintiffs have not presented sufficient factual evidence to allege with particularity that defendants' communications in the August 2022 proxy statement were objectively false or misleading in violation of Section 14(a). As defendants rightly note, citing potentially outdated metrics from October 2021 and March 2022 does not show that the updated June 2022 projections relied upon in the proxy statement were false. Plaintiffs insist that JANA's pressure on the Zendesk Board to either sell or face a proxy contest may have inappropriately influenced defendants to revise their revenue projections downwards. But the higher March 2022 revenue projections also predated Zendesk's declining bookings metrics in April and May of 2022, which defendants argue contributed to Zendesk's rapidly declining stock price. *See In re Finjan Holdings, Inc. Sec. Litig.*, 2021 WL 1391539, at *12 (N.D. Cal. Apr. 13, 2021) (noting that evidence that "the stock had not always performed well and/or revenues were low" "in the months preceding" the transaction undermined plaintiffs' position that the lower May 2020 revenue projections were false, notwithstanding the higher December 2019 revenue projections).

Plaintiffs do not present any *contemporaneous* evidence that directly contradicts or is inconsistent with the June 2022 projections, as they must do to adequately plead objective falsity for a Section 14(a) claim. In the absence of such evidence that would contradict defendants' revenue projections or the evidence of declining bookings following March 2022, plaintiffs have not sufficiently alleged that defendants acted unlawfully by updating revenue projections downwards before the sale to the Consortium. *See, e.g.*, *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1043 (N.D. Cal. 2019), *aff'd*, 994 F.3d 1102 (9th Cir. 2021) (dismissing a private securities fraud lawsuit because the "Proxy Statement explains that management adjusted its projections in

---

[2] Because plaintiffs reference the proxy statement in their complaint, the Court takes judicial notice of the proxy statement attached to defendants' motion, Dkt. No. 35-1, and the unrebutted bookings metrics therein. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may … consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" in deciding on a motion to dismiss).

response" to surprisingly low earnings in the prior quarter).

Plaintiffs cite *Karri v. Oclaro, Inc.*, 2020 WL 5982097 (N.D. Cal. Oct. 8, 2020) to support their position. In *Karri*, the Court held that lead plaintiffs had sufficiently pleaded falsity because defendant "Oclaro's management decided to revise downward its internal financial projections [in February] for the second time in as many months," *id.* at *1, notwithstanding "rosy statements" made by the CEO about Oclaro's prospects during a February earnings call, *id.* at *6. Plaintiffs argue that the facts here are analogous; in plaintiffs' view, the defendants turned down the Consortium's May 2022 offers and announced in early June 2022 that they hoped to run Zendesk as a standalone company, but shortly thereafter decided to revise their financial projections downwards and to sell the company to the Consortium for an even lower price. But *Karri* is distinguishable from the circumstances here. In that case, the company lowered its financial projections in February prior to a sale even though the CEO *contemporaneously* noted that the company had positive prospects and financial analysts had noted that the company's stock price was undervalued. In contrast, defendants here only changed their position and lowered Zendesk's projections after Qatalyst released a June 15, 2022 report indicating that the company's year-over-year bookings metrics had declined in May 2022. Further, unlike in *Karri*, Zendesk's stock price continued to decline in the intervening period. Because the alleged facts here do not involve the same contemporaneous disparity between the company's internal financial projections and external communications about the company, *Karri* does not support plaintiffs' position.[3]

### 2. Plaintiffs Have Not Sufficiently Alleged Subjective Falsity.

To determine if a plaintiff has adequately pleaded subjective falsity, a court conducts a dual inquiry: First, it will "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a reasonable inference of subjective falsity; second, if no individual allegations are sufficient, [it] will conduct a holistic review of the same allegations to determine whether the insufficient allegations combine to create a reasonable inference of subjective falsity." *In re Finjan*

---

[3] The intervening changes in Zendesk's metrics and stock price also differentiate the facts here from those in other cases plaintiffs cite to support their argument that any revised downward projection before sale establishes falsity. *See, e.g.*, *In re Aimmune Therapeutics, Inc. Secs. Litig.*, (N.D. Cal. Apr. 29, 2022).

*Holdings, Inc.*, 58 F.4th 1048, 1060 (9th Cir. 2023) (cleaned up).

Plaintiffs allege that Zendesk's board members knew that the June 2022 revenue projections were inaccurately low but nonetheless approved them in the proxy statement because of JANA's threat of a proxy contest. But plaintiffs do not provide any evidence that JANA's purported threat actually caused Zendesk's Board of Directors to approve management's revised downwards valuation in order to expedite a sale. Standing alone, plaintiffs' allegations thus do not create a reasonable inference of subjective falsity. *See, e.g.*, *In re Lukens Inc. Shareholders Litig.*, 757 A.2d 720, 729 (Del. Ch. 1999) ("[T]here is no logical force to the suggestion that otherwise independent, disinterested directors of a corporation would act disloyally or in bad faith and agree to a sale of their company 'on the cheap' merely … because of the possibility that a third of their number might face opposition for reelection at the next annual stockholders meeting."), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).

Plaintiffs also question how defendants, based only upon negative bookings data for April and May 2022, could drastically reduce Zendesk's projections for as far out as 2031 by up to 31% so soon after telling shareholders that Zendesk should operate as a standalone company. Dkt. No. 37, at 17. But whether or not the decision to reduce projections based on a single quarter's data was a sound one, plaintiffs fail to establish through this circumstantial evidence that Zendesk's board members intentionally published false or misleading projections by updating Zendesk's revenue numbers downwards in June 2022. Rather, a reasonable alternative explanation for this revision was Zendesk's continuously declining stock price and lower-than-expected bookings data in the months preceding the sale.

In sum, after conducting a holistic review of plaintiffs' allegations, none of those allegations on their own or in combination give rise to a reasonable inference of subjective falsity.[4]

### B. Plaintiffs Have Not Adequately Pleaded Scienter.

To adequately plead scienter the complaint must "state with particularity facts giving rise

---

[4] Defendants separately argue that the challenged opinion statements are forward-looking and thus protected by the PSLRA's safe harbor provision. *See* Dkt. No. 34, at 25; 15 U.S.C. § 78u-5(c)(1). Because the Court dismisses the Section 14(a) claim for plaintiffs' failure to adequately plead falsity, it need not address this argument at this time.

8

to a strong inference that the defendant acted with the required state of mind." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007), the Supreme Court held that a "strong inference" of scienter exists "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." A court must conduct a dual inquiry in assessing whether this standard is met: "[F]irst, it determines whether any one of the plaintiff's allegations is alone sufficient to give rise to a strong inference of scienter; second, if no individual allegations are sufficient, it conducts a holistic review to determine whether the allegations combine to give rise to a strong inference of scienter." *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747, 766 (9th Cir. 2023).

"[T]he subjective falsity required by Section 14[] is not equivalent to the scienter requirement referenced in 15 U.S.C. § 78u-4(b)(2)(A)." *In re Finjan Holdings, Inc.*, 58 F.4th at 1052. While allegations of subjective falsity "need provide only enough factual material to create reasonable inference," *id.*, allegations of scienter must create a *strong* inference. For the same reasons that plaintiffs fail to sufficiently allege subjective falsity, plaintiffs' allegations do not satisfy the even more stringent scienter standard.

### C. Plaintiffs Have Not Adequately Pleaded Loss Causation.

Adequately pleading loss causation requires particularized allegations that "the very facts about which the defendant [allegedly] lied" caused injuries. *Nuveen Mun. Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013). Here, plaintiffs allege that defendants' sale of Zendesk to the Consortium at $75.50 per share resulted in financial loss to the class because Light Street offered to purchase half of Zendesk's shares at the higher price of $82.50 per share. Defendants respond that this hypothetical proposal was purely speculative and that the company was in fact sold at a premium on its market stock price at the time of the sale.

Plaintiffs' allegations regarding the last-minute Light Street proposal fail to plead loss causation with particularity for two reasons.

First, Light Street offered to purchase only *half* of Zendesk's shares at a slightly better price, meaning that Zendesk's public stockholders would not necessarily have obtained a greater

1  payout had the Light Street deal gone through. For so long as the market price of Zendesk's stock
2  remained below $68.50 (it was $57.95 at the time the agreement with the Consortium was signed),
3  the proposed sale of half of Zendesk's shares to Light Street would not have resulted in any
4  overall increase in value for Zendesk's shareholders.

5  Second, as defendants note, plaintiffs do not present sufficient evidence demonstrating that
6  Light Street (which owned only 2% of Zendesk) had enough capital to go through with its
7  proposal. Indeed, independent proxy advisor Institutional Shareholder Services (ISS) stated that
8  "Light Street's eleventh-hour alternative proposal [was] not credible." Dkt. No. 35-4, at 3. ISS
9  also noted that Light Street's proposal "[did] not include any specificity on how Light Street
10 would approach the core value driver of their proposed recapitalization, which is the ability to
11 drive an operational turnaround as a highly-leveraged public company, contain[ed] problematic
12 governance terms and [was] not yet supported by any committed financing." *Id.* Considering the
13 speculative nature of the potential shareholder value from the Light Street proposal, defendants'
14 decision to forgo this proposal does not on its own establish loss causation. *See Metzler Inv.*
15 *GMBH*, 540 F.3d at 1064–65 ("[W]hile the court assumes that the facts in a [securities fraud]
16 complaint are true, it is not required to indulge unwarranted inferences [about loss causation] in
17 order to save a complaint from dismissal.").

18 Plaintiffs separately argue that defendants' dissemination of allegedly false projections in
19 their proxy statement resulted in financial loss to the class because the company was sold at a
20 price below its true valuation. But as discussed above, plaintiffs fail to establish that the true value
21 of Zendesk was in fact higher than the projections estimated. The June 2022 projections accounted
22 for intervening changes in the company's bookings metrics and market price. And, as defendants
23 point out, Zendesk was sold to the Consortium at a price 33.7% higher than the market price. That
24 the Consortium dropped its offer from $120 per share to $96 per share in May 2022 and eventually
25 to $75.50 per share in June 2022 (before management revised the revenue projections downward),
26 undermines any speculation that Zendesk would have received a better offer from other potential
27 buyers. *See In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 Fed. App'x. 603, 605 (9th Cir. 2020)
28 ("The suggestions that the [earlier] Projections nevertheless represented the 'true value' of shares

10

at the time of [bidder's] subsequent tender offer and that reasonable shareholders if informed of the earlier projections would have recognized as much and held out for a hypothetical better offer than that received from the only remaining bidder are, again, speculative in the extreme.").

## II. Plaintiffs' Section 20(a) Claim Also Fails.

Because plaintiffs have failed to allege objective or subjective falsity, scienter, or loss causation, their Section 14(a) claim must be dismissed. And because plaintiffs' Section 20(a) claim is premised on an underlying violation of Section 14(a), their Section 20(a) claim also fails. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (requiring "a primary violation of underlying securities laws" to establish a cause of action under Section 20(a)).

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss plaintiffs' complaint with leave to amend. If they so choose, plaintiffs must submit an amended complaint within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: April 24, 2024

P. Casey Pitts
United States District Judge

11